UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

WELTON WARE, JR                          CIVIL ACTION NO.  09-cv-1574

VERSUS                                   JUDGE HICKS

JOHNSON CONTROLS, INC.                   MAGISTRATE JUDGE HORNSBY

## REPORT & RECOMMENDATION

### Introduction

Welton Ware, Jr. ("Ware") filed a workers' compensation claim against his employer, Johnson Controls, Inc. ("JCI"), based on an allegation that he injured his neck and shoulder when he backed a van into a pole during the course and scope of his employment. The parties settled the claim through mediation. Petition, ¶¶ 1-3.

Ware continued to work at JCI, though his injury somewhat restricted his activities. JCI provided him suitable work. Ware also worked a second job as a casino blackjack dealer, and JCI was aware of this second job. Ware visited a physician and received a steroid injection to treat his injuries.  The injection caused pain that did not allow Ware to perform his work at JCI. Ware requested and received from JCI a temporary leave of absence from work.  During his absence, Ware continued to work at his second job as a blackjack dealer. Ware alleges that the pain from the injection did not prevent him from performing that job. ¶¶ 5-7.

JCI fired Ware when he returned to work after the leave of absence. Ware says that JCI told him he was fired because he was not supposed to be working at the casino while on

leave, but Ware contends that this was not discussed at the time he was approved for leave.
¶ 8.

Ware filed suit against JCI in state court for retaliatory discharge pursuant to LA. R.S. 23:1361. The statute prohibits retaliation against employees who file claims for workers' compensation benefits. JCI removed the case to this court based on assertions of diversity and federal question jurisdiction. JCI invoked federal question jurisdiction based on an assertion that Ware's claim is governed by a collective bargaining agreement and, therefore, preempted by the Labor Management Relations Act ("LMRA").

Ware filed a Motion to Remand (Doc. No. 10).  He argues that the court lacks federal question jurisdiction because his claim is not preempted by the LMRA. Ware also asserts that the court lacks diversity jurisdiction because the amount in controversy does not exceed $75,000. JCI filed a memorandum in opposition. (Doc. No. 14).  For the reasons set forth below, it is recommended that Ware's motion to remand (Doc. No. 10) be denied.

**Federal Question Jurisdiction**

The court lacks federal question jurisdiction because Ware's state-law retaliatory discharge claim is not preempted by Section 301 of the Labor Management Relations Act ("LMRA"). Section 301, found at 29 U.S.C. § 185(a), provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The courts have interpreted the statute so that any state-law cause of action for violation of a collective bargaining agreement is entirely displaced by federal law. That federal law, fashioned by the courts under Section 301, governs the interpretation and application of collective bargaining agreements.  The reason for LMRA preemption is to have a uniform body of law throughout the nation to ensure consistent interpretation of collective bargaining agreements. If a state-law claim is inextricably intertwined with the interpretation of the terms of the collective bargaining agreement, then the state-law claim is preempted under Section 301.  If, however, the state-law claim can be resolved without interpreting the collective bargaining agreement itself, the claim is independent of the agreement and is not preempted. See Lingle v. Norge Division of Magic Chef, Inc., 108 S.Ct.  1877 (1988); Medrano v. Excel Corp., 985 F.2d 230, 232 (5th Cir. 1993).

The parties do not dispute that Ware's employment with JCI was governed by a collective bargaining agreement between JCI and Ware's union. Ware, however, asserts that his retaliation claim can be resolved without interpretation of the agreement, and, therefore, it is not preempted by the LMRA.

Ware's claim arises under LA. R.S. 23:1361. It provides that "[n]o person shall discharge an employee from employment because of said employee having asserted a claim for (workers' compensation) benefits...."  The claim requires proof of the employer's true motive for discharging the employee.  Hooker v. Wal-Mart Stores, Inc., 870 So.2d 1131, 1136 (La. App. 2d Cir. 2004), citing King v. Career Training Specialists, Inc., 795 So.2d

1223 (La. App. 2d Cir. 2001).  JCI contends that its true motive for discharging Ware was not retaliation but that it was required to do so under the terms of the collective bargaining agreement. JCI thus argues that Ware's claim cannot be resolved without interpreting the collective bargaining agreement.

JCI points to Article VIII, Section 5 of the collective bargaining agreement as its motive for discharging Ware.  Section 5 provides: "An employee shall lose all seniority rights if: . . . (G) He/She is gainfully employed while on a Leave of Absence without the consent of the Company." Doc. 14, Ex. 1, page 12.  JCI contends that Section 5 required that JCI discharge Ware because "[l]oss of seniority rights is tantamount to termination." Doc. 14, n.1.

A leading case in this area is <u>Lingle v. Norge Division of Magic Chef, Inc.</u>, 108 S.Ct. 1877 (1988), which arose when an employee in a plant in Illinois was fired after she filed a workers' compensation claim.  The union that represented the employee filed a grievance under a collective bargaining agreement that protected the employees at the plant from discharge except for proper or just cause.  The employee also filed a suit for retaliatory discharge for exercising her rights under the state workers' compensation laws.

A unanimous Supreme Court held that the state law retaliation claim was not preempted by the LMRA despite the factual parallels between the retaliation claim and the grievance proceeding.  The reason for LMRA preemption, the Court explained, is so that a uniform body of law throughout the nation is used to ensure uniform interpretation of

collective bargaining agreements.  The retaliation claim pertained to the conduct of the employee and the motivation of the employer, neither of which required the court to interpret any term of a collective bargaining agreement.  Accordingly, the retaliation claim was not preempted.  The Court succinctly explained that the Section 301 preemption "merely ensures that federal law will be the basis for interpreting collective bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements." Lingle, 108 S.Ct. at 1883.

The Fifth Circuit faced a similar case in Jones v. Roadway Express, Inc., 931 F.2d 1086 (5th Cir. 1991) when a truck driver asserted a retaliation claim under a Texas workers' compensation statute.  The Court, citing Lingle and other authorities,  noted that preemption would occur only when resolution of a dispute is "substantially dependent upon analysis of the terms of the collective bargaining agreement." Jones, 931 F.2d at 1089.  A plaintiff's state-law claims will not be preempted, even when they are intertwined with a collective bargaining agreement, "so long as they are not 'inextricably intertwined' with it." Id.

The Jones Court observed that the employer might have other reasons, even reasons justified by the collective bargaining agreement, for firing the employee, but if retaliation was also a factor then interpretation of the bargaining agreement was not inextricably intertwined with the state-law claim.  It was not necessary that the agreement be irrelevant

to the dispute, and either party could use the agreement to support the credibility of its claims. Id. at 1089-90.

On rehearing in Jones, the employer made the argument raised by JCI that its defense to the retaliation claim was that it fired the employee in reliance on a provision of the collective bargaining agreement. The Court held that the defense did not give rise to preemption. The question in the case was whether the employer's motivation for discharge was the employee's filing of a workers' compensation claim or some other motive. If the trial court determined that retaliation was not a motive, it would not need to go further and determine whether other motives were legitimate or whether the collective bargaining agreement justified them. Because there was no call to interpret the collective bargaining agreement, there was no preemption. Jones v. Roadway Express, Inc., 936 F.2d 789 (5th Cir. 1991) (on rehearing).

JCI cites Medrano v. Excel Corporation, 985 F.2d 230 (5th Cir. 1993) to support its preemption argument, but that case arose in unique circumstances not presented in this case. The Medrano panel distinguished Roadway Express because the Medrano case was "not a typical straightforward case alleging a retaliatory discharge" in violation of state law. Medrano, 985 F.2d at 233. The employer had informed the plaintiff-employee that his employment was terminated pursuant to a specific provision of the collective bargaining agreement that an employee would lose his seniority for full settlement for a disability that the company could not accommodate. The employee argued that the settlement provision

of the collective bargaining agreement itself constituted discrimination against employees who settled their compensation claims.  The Fifth Circuit carefully distinguished <u>Roadway Express</u> and held that this unique claim was preempted.

Ware's retaliation claim in this case is a straightforward claim like that presented in <u>Jones</u>.  It does not call into question the legality of any provision of the collective bargaining agreement or otherwise require its interpretation.  <u>Jones</u> recognized that an employer may, like JCI has done in this case, point to a provision of the agreement as its true motive, but that does not give rise to preemption of the state-law claims.  Accordingly, the court does not have federal question jurisdiction over this case.

**Diversity Jurisdiction**

JCI also urges that the court has diversity jurisdiction under 28 U.S.C. § 1332.  The parties are diverse because Ware is a citizen of Louisiana, and JCI is a corporation organized under the laws of Wisconsin with its principal place of business in Wisconsin. The other element of diversity jurisdiction is that the amount in controversy must exceed $75,000. Ware argues that JCI has not met its burden on that issue.

Tort plaintiffs such as Ware who file suit in Louisiana state courts may not specify the numerical value of their damage claim. La. Code Civ. P. art. 893. If a defendant removes such a case based on an assertion of diversity jurisdiction, the defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. The defendant may make this showing by: (1) demonstrating that it is "facially apparent" from

the petition that the claims are likely above $75,000, or (2) setting forth the facts in controversy – in the notice of removal or an affidavit – that support a finding of the requisite amount. Luckett v. Delta Airlines, 171 F.3d 295, 298 (5th Cir. 1999); Simon v. Wal-Mart Stores, Inc., 193 F.3d 848 (5th Cir. 1999).

Ware's petition contains no hint as to the amount he seeks. The statute he invokes, LA. R.S. 23:1361, provides in Subsection C that a prevailing employee "shall be entitled to recover . . . the amount the employee would have earned but for the discrimination based upon . . . the earnings of the employee at the time of the discharge . . . but not more than one year's earnings, together with reasonable attorney's fees and court costs."

JCI stated in its notice of removal that "the amount in controversy is reasonably believed to be more than the jurisdictional amount of $75,000." Doc. 1, ¶ 4. It did not articulate any facts in its notice of removal to support that assertion, and it has not otherwise produced any facts or evidence in support of its burden, so JCI must rely on the face of the petition and any other information provided by Ware to meet its burden.

The face of the petition provides little information about the amount in controversy. Ware alleges that he has "lost wages" of an unspecified amount and will not be able to find another job paying as much as or more than he earned at JCI. Ware makes a general demand for attorney fees and penalties. Petition, ¶¶ 10-11.  To this point, there is no factual basis to establish that the amount in controversy is more likely than not above $75,000. But Ware

made an admission in his motion to remand that he "earned approximately $50,000 in 2007 and 2008." He added that he "earned less than $10,000 in 2009 prior to his discharge" in June. Doc. 10, n. 2. It is with these scant facts that JCI must meet its burden.

A Louisiana treatise states that no case has squarely decided whether the statutory civil penalty is the employee's exclusive remedy, but the inference from the jurisprudence is very strong that the penalty is an exclusive remedy.  14 La. Civ. L. Treatise, Workers' Compensation Law and Practice, § 362 (4th ed.).  The treatise also notes that the maximum penalty of one year's earnings has been awarded in cases even though there was evidence of other earnings during that year.  Thus, the court finds that JCI has established through Ware's admission that it is more likely than not that $50,000 is in controversy.  That does not mean Ware will recover that amount if he prevails; it simply means that amount is reasonably at stake.

JCI must now establish that it is more likely than not that the statutory attorney fee award would exceed $25,000 so that the total amount in controversy exceeds $75,000.  There is no precise formula for calculating the amount that should be attributed to statutory or contractual fees for amount in controversy purposes, but the undersigned has followed the rule that the court estimate a reasonable fee under the circumstances.  Davenport v. BellSouth Corp., 2007 WL 2572317, *2 (W.D. La. 2007); House v. AGCO Corp., 2005 WL 3440834 (W.D. La. 2005).

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." <u>Mathis v. Exxon Corp.</u>, 302 F.3d 448, 461 (5th Cir. 2002).  Louisiana courts, in assessing fees under the retaliation statute, have observed that the reasonableness of an attorney fee is largely a factual determination, based on factors such as time and labor required, the local customary fee for similar legal services, the amount involved, the results obtained, and the experience of the attorney.  <u>Fontenot v. Flaire, Inc.</u>, 641 So.2d 1062 (La. App. 2d Cir. 1994).  The amount of fees awarded is not limited by the amount of the civil penalty awarded the employee.  <u>Smith v. Holloway Sportswear, Inc.</u>, 704 So.2d 420 (La. App. 3d Cir. 1997).

This should be a relatively straightforward case in which a single plaintiff asserts one claim against one defendant for a maximum recovery of $50,000.  There is no reason to expect that discovery and other pretrial matters would be any more involved in this case than the run-of-the-mill civil litigation.  Fee awards in the few cases cited in the attorney's fees annotations to the statute are for only a few thousand dollars, and JCI has not cited any cases in which an award in excess of $25,000 was made.  It was incumbent upon JCI, not the court, to conduct the research that might help JCI satisfy its burden with respect to the amount in controversy.

This court sees a number of Title VII and other civil rights cases in which statutory attorney fees are awarded.  In many cases, a reasonable fee will exceed $25,000, but in many other cases a reasonable fee will be for less than that amount. It is, therefore, possible that

a reasonable fee in this case could exceed $25,000, but the fact that the fees may, might, or could well exceed $25,000 is insufficient to satisfy JCI's burden.  See Allen v. R&H Oil & Gas Co., 63 F.3d 1326, 1336 (5th Cir. 1995).  It must be more likely than not that a reasonable fee in this case will exceed that amount. It is, at best, an even-money proposition that a reasonable fee award in this case would exceed $25,000, so JCI has not satisfied its burden of establishing the requisite amount in controversy.[1]

Accordingly,

**IT IS RECOMMENDED** that Ware's Motion to Remand (Doc. No. 10) be granted and this case be remanded to the First Judicial District Court, Caddo Parish, Louisiana, where it was filed as suit no. 533,455-C.

------

[1]A civil action filed in state court "arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  28 U.S.C. § 1445c.  The Fifth Circuit held in Jones, 931 F.2d at 1091-92 that the Texas retaliation claim did arise under workers' compensation laws of Texas even though the statute (like the Louisiana statute) was not part of the workers' compensation chapter.  Some courts have held that claims under the Louisiana retaliation statute are also subject to the statutory bar on removal.  See Ravencraft v. Sundowners Offshore Services, Inc., 1998 WL 246699 (E.D. La. 1998); Adams v. National Medical Enterprises, Inc., 1992 WL 202366 (E.D. La. 1992); and Wong v. Delta Air Lines, Inc., 1989 WL 98779 (E.D. La. 1989).  Another court, not mentioning Jones, held that the retaliation claim was not subject to the removal bar.  Charles v. Transit Management of Southeast Louisiana, 1994 WL 479105 (E.D. La. 1994).  This court need not reach the issue because it has already determined that it lacks subject-matter jurisdiction and because Ware did not raise the statutory bar in his motion to remand.  The statutory bar is a procedural defect that is waived if not raised within 30 days of removal.  Patin v. Allied Signal, Inc., 77 F.3d 782, 786 (5th Cir. 1996).

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and FED. R. CIV. P. 72(b), parties aggrieved by this recommendation have 14 days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under FED. R. CIV. P. 6(b).  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 5th day of February, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE